Delores **LANSING**, Appellant,

v.

Leonard Wayne **ALLEN**, Appellee.

No. 6015.

Court of Civil Appeals of Texas, Waco.

Aug. 16, 1979.

Rehearing Denied Sept. 13, 1979.

W. Mac Gann, Lennon C. Wright, Miller, Gann & Perdue, Houston, for appellant.

Alice Giessel, Howell E. Stone, Talbert, Giessel & Stone, Houston, for appellee.

HALL, Justice.

A passenger car driven by plaintiff Delores Lansing and a pickup truck driven by defendant Leonard Wayne Allen collided head-on on plaintiff's side of the roadway. Plaintiff brought this suit for her personal-injury damages. The case was tried to a jury. The jury failed to find that defendant committed any act of negligence submitted against him, which were speed, lookout, brakes, and failure to keep his vehicle completely within his right half of the roadway. The jury failed to find that plaintiff acted negligently on issues of lookout and brakes; but they convicted her of negligently failing to turn her vehicle to avoid the collision, and found that such negligence was a proximate cause of the collision. The jury also set plaintiff's damages at $750.00 for past physical pain and mental anguish, $500.00 for future physical pain and mental anguish, $945.00 for lost earnings in the past, and $1,500.00 for past medical expenses. Judgment was rendered on the verdict that plaintiff take nothing. She appeals. We affirm the judgment.

Plaintiff contends that the findings exonerating defendant of negligence and the findings against her of negligence and proximate cause on her failure to turn her vehicle are all against the great weight and preponderance of the evidence.

The collision occurred at approximately 5:00 P.M. on Friday, May 23, 1975, in the 2800 block of Almeda-Genoa Road in the City of Houston, Texas. The location of the accident was near the middle of a curve in the road. The curve is long and gradual, and it does not obstruct the driver's view as it is negotiated. The road is two-laned asphalt-paved and runs east and west. The pavement is about eighteen feet wide, and there is a firm shoulder four feet wide on each side of the pavement. There is an abrupt drop of approximately two inches from the top of the pavement onto the shoulder.

At the time of the collision, plaintiff was 27 years of age. She was driving a 1962 Chevrolet passenger car which was in good mechanical condition, and she was familiar with its operation. Defendant was 34 years of age. He was driving a 1972 Chevrolet pickup truck which was in good mechanical condition and equipped with a new set of tires, and he was familiar with its operation.

Both parties suffered personal injuries in the collision. There were no other witnesses to the accident. Among other injuries, plaintiff sustained a cerebral concussion. She testified she has no memory of the facts surrounding the collision.

Defendant testified that prior to the collision he was traveling in the westbound lane of Almeda-Genoa Road at about forty miles per hour. The weather was clear, and the traffic was light. He had stopped at a service station located on Almeda-Genoa Road about nine miles from the place of the accident and purchased gasoline, a beer, and cigarettes. This was the first time he had traveled this route. He took it on this occasion, after work and on the way to a bakery surplus store, to avoid heavy traffic.

He noticed there was a pavement-shoulder offset. After he had entered the curve in the road, which curved to his right, he reached with his right hand for a box of matches resting on the right side of the dash of his truck, intending to light a cigarette. The beer was between his legs. When he reached for the matches his left hand pulled the steering wheel to the right and the two right wheels of his vehicle went onto the shoulder of the road about one foot off the pavement. He did not apply his brakes, but he took his foot off the accelerator pedal to slow down. He did not lose control of the truck. He traveled with his right wheels on the shoulder about 30 or 40 feet, "just long enough to set back straight under the steering wheel," at which time he had "complete control of the vehicle." He then cut his wheels slightly to the left to get back onto the pavement. When he did, his wheels hit the offset on the edge of the pavement and it jerked his truck and threw it across the road and into a skid, and he lost control. Once he started skidding he could not stop or change directions. He tried to stop, his brakes locked, and he couldn't turn the car because the brakes were locked. He skidded out of control at a gradual angle into plaintiff's lane, skidding about 50 feet in his lane and about 50 feet in the other lane. He saw plaintiff coming toward him in the eastbound lane just as he entered her lane. She was three or four hundred feet down the road. He saw no other cars on the road. Plaintiff started blowing her horn when she was more than 100 feet away. He was skidding when he first saw her, and he continued skidding up to the time of the impact. Plaintiff's car did not slow down and did not turn to either side before impact. "It just kept on honking and honking and kept coming, and we had a wreck." Defendant had skidded almost to a complete stop at the time of impact, and was traveling "maybe five or ten miles per hour at the most." The collision occurred on defendant's "extreme left-hand" side of the road on the pavement. After the accident, defendant looked behind plaintiff's car, but he did not see any skid marks.

The investigating officer testified he found 100 feet of skid marks behind defendant's truck, from the westbound lane into the eastbound lane directly behind the truck. He also found 100 feet of skid marks directly behind plaintiff's car. He determined the point of impact to be "two feet out from the edge of the pavement." Plaintiff's vehicle was partially off the pavement. He said that defendant told him, "I was on Almeda and I reached for some matches. The truck swerved into the other lane and we hit. I had been drinking one beer." He did not recall that defendant said anything "about dropping off the asphalt."

The posted speed limit in the area in question was not developed on the trial. Defendant believed the speed limit was 35 or 40 miles per hour. Plaintiff's counsel thought it was 55.

■ It is our view and holding that the jury's findings are not against the great weight and preponderance of the evidence.

The court charged the jury on sudden emergency, and included in the definition the instruction that the emergency must not be proximately caused by any negligence on the part of the person seeking exoneration under the doctrine. Plaintiff argues the instruction was improperly given in this case because the emergency was caused by defendant's negligence when he "stretched out across the cab of the truck fumbling for his matches" while attempting to "simultaneously balance his refreshment." Plaintiff also argues that defendant was guilty of negligence as a matter of law by violating the provisions of Vernon's Tex.Civ.St. article 6701d, § 52(a), when he crossed into plaintiff's lane. We overrule those contentions.

■ The unexcused violation of a statute designed to prevent injury to the class of persons to which the injured party belongs constitutes negligence per se. *Moughon v. Wolf*, (Tex.1978) 576 S.W.2d 603, 604. In *Moughon*, our Supreme Court expressly held that an unexplained violation of § 52(a) of article 6701d fits within the

rule. However, the court has recognized a number of excusable situations, one being where the driver "is confronted by an emergency not due to his own misconduct." *Impson v. Structural Metals, Inc.*, (Tex. 1972) 487 S.W.2d 694, 696. Under the latter rule, the statutory violation is excused when the motor vehicle goes out of control and enters the wrong lane of traffic, for reasons not caused by the driver. In *L. M. B. Corp. v. Gurecky*, (Tex.1973) 501 S.W.2d 300, the defendant's car began to weave by reason of a deflated tire; and when he applied his brakes his car swerved to the wrong side of the highway and struck plaintiff's car on the shoulder of the road. In *Antee v. Sims*, 494 S.W.2d 215 (Tex.Civ. App.—Houston [14th] 1975, writ ref'd n. r. e.), the defendant's brakes suddenly and unexpectedly pulled him to the left into the other lane. In *Phoenix Refining Co. v. Powell*, 251 S.W.2d 892 (Tex.Civ.App.—San Antonio 1952, writ ref'd n. r. e.), a blow-out occurred to the tire on the left-front wheel of defendant's truck and caused the truck to be thrown or pulled to the left side of the road.

In our case defendant explained that his truck was suddenly and unexpectedly propelled across the highway when the wheels of the vehicle encountered the offset between the pavement and the shoulder of the road as he attempted to return to the paved portion. The evidence does not establish as a matter of law that he acted negligently in the premises.

The judgment is affirmed.